sloop could not have luffed without danger of running aground; a risk which, under the circumstances of the case, it was not the duty of the master of the sloop to encounter. The master of the sloop appears to have relied upon those navigating the steamer to take the measures necessary to avoid a collision, and his lookout seems to have been kept solely with a view to guard against danger from the windward. He was running near to the shore, for the purpose of keeping as far as practicable to the windward of Red Hook, and he appears to have thought it necessary to guard against the dangers of the reef at the southwesterly point of Governor's Island (a reef he was then rapidly approaching), rather than against the danger of collision with the steamer on the opposite side, when it was the obvious duty of those in charge of the steamer to take efficient means to render a collision impossible. He had seen the steamer, and assured himself that she had ample room in the wide and unobstructed channel, and had, I think, a right to assume that the steamer would follow the rule of navigation applicable to the circumstances, and pass at a safe distance to the right and under his stern.

After a careful consideration of the case, I am not able to say that the omission of the master of the sloop to sustain a lookout to the leeward was a fault requiring an apportionment or division of the damages in this case. The duty of those in charge of the steamer was so clear and palpable, it was so obvious that the exertion of ordinary care on their part would certainly prevent all danger of collision, that the master of the sloop was justified in directing his attention to the shore and reef on the opposite side of his vessel, and in leaving to the master of the steamer the whole duty of avoiding a collision between the sloop and steamer. If the pilot of the steamer saw that the sloop was a bad steering vessel, or was uncertain of her course, he should have given her a wider berth by heading up the channel, instead of allowing the steamer to float with the tide until there was danger of a collision, and then heading her on to the sloop as much as possible, that the steamer's side might be secured against the impending blow. I am unable to perceive that the master of the sloop had any reason to apprehend that an attempt would be made to run the steamer out of her accustomed course, and incur the hazard of passing across the bows of the sloop (which, with a fresh wind and favoring tide, was running at a very rapid rate, and about crossing the steamer's track), when it was apparent that the steamer could pass under the stern of the sloop with great ease and perfect safety.

In my judgment, the libellants are entitled to a decree for their damages and costs, and the usual order for a reference, to ascertain the amount of such damages will be entered.

## Case No. 7,174.
### Ex parte JAMES.
[See Case No. 7,175.]

## Case No. 7,175.
### In re JAMES.
[2 N. B. R. 227 (Quarto, 78);[1] 1 Gaz. 78.]
District Court, District of Columbia. 1868.

WYLIE, Judge. When a bankrupt has obtained his final discharge, and a balance of his deposits for fees in the hands of the register has been paid over to the assignee, the balance in such case should be distributed among the creditors who have been returned by the applicant himself, in proportion to the amount of their several claims. If only one creditor has proved his claim, he would have been entitled to full payment, if the fund had been sufficient. The question is not, therefore, a question between different creditors contesting over the distribution of a fund which is inadequate to the payment of all; but it is a question whether the money shall be returned to the bankrupt himself, after he has returned a list of creditors to whom he has acknowledged on record that it should be paid. In such case the money should be distributed amongst the creditors, although they have failed to make proof of their claims.

## Case No. 7,176.
### The JAMES.

## Case No. 7,177.
JAMES v. ATLANTIC DELAINE CO. et al.
[3 Cliff. 614.][2]
Circuit Court, D. Rhode Island. Nov. Term, 1867.

[1] [Reprinted from 2 N. B. R. 227 (Quarto, 78), by permission.]
[2] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]